Herman Schuth, Plaintiff-Appellee, v. Russell Kuntz et al., Defendants-Appellants.

Gen. No. 9,783.

Opinion filed March 11, 1952. Rehearing denied May 6, 1952. Released for publication May 6, 1952.

COSTIGAN, WOLLRAB & YODER, and BERNARD E. WALL, all of Bloomington, for appellants.

STONE, STONE & HESS, of Bloomington, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

This is an action for personal injuries arising out of the collision of two automobiles, wherein Herman Schuth is plaintiff-appellee, and Russell Kuntz and Albert J. Kuntz are defendants-appellants. The jury returned a verdict in favor of the plaintiff in the sum of $10,000 against the defendants, for which amount judgment was entered following denial of motion for judgment notwithstanding the verdict and motion for new trial. This appeal follows.

The complaint as amended substantially charged that Albert J. Kuntz, the father of Russell Kuntz, was the owner of a 1942 Oldsmobile automobile which was being driven by his son Russell as his agent in a southerly direction on Oak street, toward the intersection of Willow street, in the Town of Normal, McLean county, Illinois, on November 27, 1947, at about

7:30 a. m.; that the grandmother and sister of the defendant Russell Kuntz were passengers in the car; that plaintiff was then driving his 1940 Chevrolet automobile in a westerly direction on Willow street toward the intersection of Oak street, in said Town of Normal in the exercise of due care and caution for his own safety and that of his automobile; that plaintiff's wife and two small children were passengers in his car; that defendants' automobile was negligently operated in that, among other specific charges of negligence, it failed to yield the right of way and collided with plaintiff's car as the latter was well into the intersection, causing serious permanent injuries to plaintiff, loss of earnings, medical expense, and damage to his automobile. A wilful and wanton count followed, but this was taken from the jury at the close of plaintiff's case.

From the evidence it appears undisputed that the two cars proceeding in the directions as charged did collide in the intersection; that there was no snow on the streets which were of gravel or gravel and asphalt construction; that the day was ''dreary'' and snow began falling soon after the collision; that a park was located on the northeast corner of the intersection in which were a few leafless trees, and that each driver had an almost unobstructed view of the other continuously for almost a block; that Russell had general permission to use his father's car at any time; that he was going to church and that his sister and grandmother were also going to church as passengers in the car; there was no direction or instruction by the father to the son to make the trip but Russell had his father's consent; that the right-front end of defendants' car came in contact with the right-rear side of plaintiff's car at the rear of the running board and just above and slightly to the front of the right-rear wheel; that the car of plaintiff swung to the southwest corner of the intersection where it broke off a telephone pole,

upon which plaintiff was thrown from the car, and did sustain injuries. The most important disputed matter relates to the respective speeds of the two cars, and their relative distances from the intersection just prior to the collision, or in other words as to which car had the right of way. The agency of the son Russell, then aged nineteen, is questioned by the father Albert J. Kuntz, and it is claimed that the damages awarded were excessive.

The formal assignments of error charge that the court erred in not granting the motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence, in not granting the motion for judgment notwithstanding the verdict and the motion for a new trial; in entering judgment for $10,000; and that the verdict was contrary to the law and the evidence and particularly so as plaintiff was guilty of such contributory negligence as would bar recovery.

██ As to the evidence concerning the right of way it is readily apparent that the defendant Russell Kuntz was negligent as his own testimony is as follows: "Well, I was driving south on Oak Street, and as I got rather near the intersection I looked to my left and saw no car; I looked to my right and saw no car and about the same time I was looking to my right my sister looked to the left and hollered at me, she said, 'Here comes a car.' I immediately looked to my left and about a car's length from the intersection, or from me, I saw the Schuth car. I applied my brakes immediately. That is what happened." Further in his testimony his attorney asked him: "Where was his car when it was struck by your car?" and he answered: "About in the middle of the intersection." On cross-examination he was asked this question: "Then as you approached the intersection where the collision occurred you have a half or three-quarters of a block at least during which you had an almost unobstructed

337

view of Willow Street from the east of the intersection, isn't that true?" and he answered: "That is right." The further question was asked: "Now, your windows were steamed?" and he answered: "No, they wasn't." It is apparent that, having a view easterly to his left of half or three-quarters of a block from which direction the plaintiff's car was approaching, he obviously didn't look or he would have seen what was there to be seen, that is, the Schuth car. He did not see it until it was a car length away, indicating that he drove blindly into the intersection.

As to any contributory negligence on the part of the plaintiff, the above statement by this defendant that he struck the plaintiff's car "about in the middle of the intersection" is extremely pertinent, especially when considered with other testimony that he was on his right side of Oak street and did not swerve his car just prior to the collision, and in the light of the Exhibits 9 and 11 showing where each car was damaged. The right front of defendants' car was smashed, and the damage to plaintiff's car was at the right-rear end. It can well be argued that the jury was justified in concluding that plaintiff was in the west half of the intersection when struck. However, discussing the evidence further, the plaintiff testified that he first saw defendants' car when he was about half a block from the intersection and that his speed was about twenty miles per hour; that he decreased his speed to about fifteen miles at the intersection, and in the intersection he increased his speed somewhat; that he made no effort to stop and did not apply his brakes; that when he was twenty-five to thirty feet from the intersection he made up his mind that he could cross the intersection before defendants' car reached it; defendants' car was about 125 to 130 feet away from the intersection as plaintiff entered it and that defendant was driving about forty-five to fifty miles per hour;

that when he was 150 feet away from the intersection he couldn't tell very well how fast defendants' car was coming; he thought he had time to cross; he was pretty well across the intersection when his car was struck. Plaintiff's wife testified that she was riding in the front seat of the car which was going about twenty miles per hour before it reached the intersection and when she first saw defendants' car; that when plaintiff's car entered the intersection the other car was half a block away going about forty miles per hour; when she first saw the other car it was a block from the intersection and her car was a half a block from it; about two car lengths from the intersection plaintiff's car slowed to about fifteen miles. The defendant Russell Kuntz testified that he was going about twenty to twenty-five miles per hour as he approached the intersection; that although he only observed plaintiff's car while it was travelling one car length, it was going about thirty miles per hour. The sister of Russell Kuntz, Patricia, testified that she was seated in the front seat of the car, and that it was going about twenty miles per hour as it approached Willow street; that she first saw plaintiff's car when it was a car length away travelling about thirty to thirty-five miles per hour. A witness for defendants by the name of John Lowery testified that he was seventy-two years of age; did not know plaintiff or defendants; never had driven a car; lived on the south side of Willow street a block east of the scene of the collision; he was at breakfast in a southwest room with visibility through windows to the west all the way to Oak street; he saw a car approaching the intersection from the north and one from the east; they were both going at a pretty good speed; the car going west was going faster; he was unable to make any estimate as to speed in miles per hour; defendants' car was a half a block north of the intersection when he first saw it

and plaintiff's car was just passing the house of witness. The wife of the last witness, Anna Lowery, testified that when she saw the two cars she believed there would be a collision if somebody didn't slow down; she had driven cars for twenty-five years; plaintiff's car was going about thirty-five or forty miles per hour and that of defendants' not much more than thirty miles; she did not know either plaintiff or defendants; defendants' car was coming down a little grade when she first saw it and she thought it was a little closer to the intersection than the other car. This was all of the testimony as to speed and distances, except that of a young child of plaintiff which is of slight value.

██ An analysis of the above indicates that the question of contributory negligence of the plaintiff was one of fact for the jury and that it cannot be said, as a matter of law, that plaintiff was guilty of such contributory negligence as would bar his action. The court properly denied the several motions for a directed verdict and submitted the case to the jury. It likewise cannot be said that on this issue, the finding of the jury was against the manifest weight of the evidence, nor that the court should have granted the motion for a new trial.

██ As to whether or not the damages awarded by the jury were excessive, it appears that plaintiff suffered a fracture of the third and fifth lumbar vertebra, was in the hospital for seven weeks, part of the time in a cast extending the length of his back from the neck down; that he has never since been able to lift more than thirty pounds and cannot operate his tractor without pain for more than short periods; that when first directed to stand on his feet at the hospital his leg started to swell as a result of thrombo-phlebitis; that at the time of the trial, two years after the injury there was still a residue of swelling and that he has

frequent cramps; that he suffered a gash on his head and still suffers severe headaches and has some loss of memory; that as treatment of the latter he was in the hospital for a week, about a year after the injury, and had his throat lanced for the purpose of injecting a fluid into his carotid artery which left a scar; that he still occasionally faints. Special damages were proved in about the sum of $1,700 for medical and hospital expense, repair of car, and for the expense of extra hired help on the farm. It does not appear that the jury's award of $10,000 was excessive.

█ Counsel for the defendant A. J. Kuntz, the father of the defendant Russell Kuntz, who was the owner of the car but not an occupant at the time of the collision, in what appears to be a casual afterthought, suggests that the judgment ought not to stand as to him because the evidence does not indicate that his son, the driver, was his agent. The evidence conclusively shows as a matter of law that the son was driving the car under circumstances which would bring into application the familiar and so-called Family Purpose Doctrine, which does not apply in Illinois. The judgment must be reversed as to the father-defendant, A. J. Kuntz. (*DeMay v. Brew,* 317 Ill. App. 183.)

The judgment of the circuit court is affirmed as to the defendant Russell Kuntz, and is reversed as to the defendant A. J. Kuntz.

*Affirmed in part and reversed in part.*